## Lexington & Eastern Railway Company v. Smith's Administrator.

(Decided November 9, 1916.)

### Appeal from Breathitt Circuit Court.

1. Death—Master and Servant—Railroads.—A railroad employe working in a yard of the company in which a number of men were employed and whose duty it was to look after the switch lights and repair the tracks, was struck and killed by a caboose being pushed by an engine, when he stepped from the track he was repairing onto a track nearby. Held that the company was under a duty to have some person on the front end of the caboose to give warning to employes.

2. Death—Master and Servant—Railroads—Employers' Liability Act.—Although the employe may have been guilty of contributory negligence in standing on the track, so was the company guilty of negligence in failing to have some one on the front end of the caboose, and his contributory neligence did not defeat a recovery but only went to diminish the amount of the recovery.

3. Master and Servant—Railroad Yard—Evidence of Use of Yard by Licensees.—In an action by the administrator of an employe who was killed in a railroad yard, evidence of the use of this yard by persons not in the employment of the railroad company was not admissible, as the liability of the company for the death of the employe must rest on the duty it owed him.

BENJAMIN D. WARFIELD, CHARLES H. MOORMAN, CHARLES M. HARRISS, SAMUEL M. WILSON and O. H. POLLARD for appellant.

ROBERT HARDING, SOUTH STRONG and CHESTER GOURLEY for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

Logan Smith received injuries from which he died while employed by the appellant railway company in its yard at Jackson, Kentucky. In this suit by his administrator, under the Federal Employers' Liability Act, to recover damages for his death, there was a judgment for the administrator, and the railway company appeals.

Briefly the facts are these: there are several tracks in the yard of the company at Jackson, and at the time Smith received the injuries from which he died, there were three trains operating in the yard, and a number of men connected in various ways with the railway company were moving about in the yard in the performance

of their regular duties. It was Smith's business to look after the switch lights in the yard and make such repairs on the tracks in the yard as he could do without the assistance of other track repairmen. At the time he received the injuries that resulted in his death, he was engaged in making light repairs with a wrench and some bolts on a track close to and parallel with the main track. While he was so engaged a train moved over the track he was repairing and to get out of its way he stepped backwards and stood on the main track looking at the rail he had been repairing, while the train passed over it. While he was so standing with his mind on his work an engine shoving a caboose in front came up on the track on which he was standing with his back or his side towards the caboose, and he was struck by the caboose and received injuries from which he shortly died.

The train by which he was struck carried a crew consisting of a fireman, engineer, conductor and two brakemen. The fireman and engineer were in the engine cab, the head brakeman was on the pilot of the engine in front of which was the caboose, and there was no person on the front end of the caboose or, indeed, at any other place on the caboose. The evidence does not clearly disclose where the conductor and the other brakeman were, but they were not on the running train. The view of the brakeman on the pilot of the engine was completely obstructed by the caboose the engine was pushing, and this caboose also prevented the engineer and fireman in the cab of the engine from seeing objects on the track in front of the caboose. The train was moving about four miles an hour at the time of the accident, and there is conflict in the evidence as to whether the engine bell was ringing. There is also some evidence tending indirectly to show that before he was struck Smith was warned of the approach of the train by another employe of the company not connected with the train's movement.

On this state of facts it is insisted by counsel for the company that the negligence of Smith, in taking a position on the track when he could have stood between the two tracks, was the sole cause of his injury and death and therefore a directed verdict in favor of the company should have been ordered.

With this contention we are unable to agree. It may be conceded that Smith was guilty of contributory negligence in standing on this track when he could have stood

between the track on which he was working and the track on which the train was moving and thereby escaped being struck. But this contributory negligence on his part, if it be such, does not defeat a recovery in behalf of his administrator; it only goes to diminish the amount of recovery. We say this because the company, under the rule announced in L. & N. R. R. v. Johnson's Admr., 161 Ky. 824, and Norfolk & Western Ry. v. Short's Admr., 171 Ky. 647, was also guilty of negligence in not having some person on the front end of this caboose to give warning to employes of its presence. It it very plain that if there had been some person, for example the brakeman who was on the engine pilot, on the front end of this caboose, he could have warned Smith in time to have enabled him to leave the track before being struck. So that if he was guilty of contributory negligence in standing on the track, so was the company guilty of negligence in failing to have some person on the front end of the caboose, and this joint and concurring negligence of both parties brought about the death of Smith.

It is further said that Smith's duties were of such a nature as required him to be on the lookout for moving trains, and therefore the rule announced in C., N. O. & T. P. Ry. v. Swann's Admx., 160 Ky. 458, and the cases therein cited, absolves the railway company from the duty it was under to keep a lookout for Smith. But the facts of this case do not bring it within the scope of the rule announced in this line of cases. Nor is it to be controlled by what was said in Blankenship's Admr. v. Norfolk & Western Ry., 147 Ky. 260.

In the Swann case the non-liability of the railway company was put distinctly on the ground that it was the duty of Swann, who was the foreman in charge of the work, to look out for trains so that he might have the track cleared of tools and material and protect his men from injury. In the Blankenship case it appears from the opinion that Blankenship was a track walker on a line of railway out in the country whose duty it was to ascertain whether or not the track was safe and to do light repair work thereon whenever he found such work necessary in order to keep the road in good repair. And the decision holding that there could be no recovery on behalf of his administrator was put upon the ground that his work as a track walker necessarily put

upon him the duty of keeping out of the way of passing trains.

But in the case we have Smith was struck and killed in a yard of the company in which employes were constantly passing to and fro and engines and trains constantly moving about. In short, the facts of the case bring it directly within the scope of the rule laid down in the Johnson and Short cases, and inasmuch as our views upon this subject have been set forth quite fully in these cases, it is not necessary to repeat them here.

Objection was made by counsel for the railway company to the introduction of evidence showing that a large number of persons living in the neighborhood of this yard and not connected with the railway company were in the habit of walking across and going about in the yard by the permission or at least with the acquiescence of the company. We presume this evidence was admitted upon the theory that the number of persons so using the yard was sufficient to put upon the company the duty of anticipating their presence and exercising the care of lookout and warning that has been laid down in a number of cases. But we do not think evidence as to the use of this yard by persons not in the employment of the company was competent. The liability of the company 'must rest on the duty that it owed to Smith as an employe, as we have defined it without reference to the duty it might owe to licensees.

The instructions are complained of, and we think they are open to at least some of the objections to which our attention is called. The correctness of instruction number one, insofar as it recites that both the company and Smith were engaged in interstate commerce at the time he was injured, is not, under the evidence, open to objection. But in this instruction there should have been incorporated the idea expressed in the Johnson case, that if the jury believed from the evidence that the yard was used by so large a number of employes as that the railway company, in the exercise of ordinary care in the movement of its cars and engines, should have anticipated their presence on the tracks, it was the duty of the company in the movement of the caboose and engine to exercise the care pointed out in instruction number one.

Instructions two and three are also objectionable in that they do not conform to the practice laid down by

the Supreme Court of the United States in a number of cases and followed by this court in many cases. Louisville & Nashville R. Co. v. Holloway, 163 Ky. 125, 168 Ky. 262; C. & O. R. Co. v. Kelly, 241 U. S. 483; C., N. O. & T. P. R. Co. v. Jones' Admr., 171 Ky. 11.

Counsel for the company offered a number of instructions, but we do not find that the court committed error in refusing to give any of these instructions. We think the instructions given, when instructions one, two and three are corrected as indicated, present the whole law of the case.

Wherefore, the judgment is reversed, with directions for a new trial in conformity with this opinion.